UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UDON KATEPHAN,

Petitioner,

v.

MARKWAYNE MULLIN,
SECRETARY OF THE DEPARTMENT
OF HOMELAND SECURITY; et al.,

Respondents.

Case No.: 26cv3240-LL-MMP

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**[ECF No. 1]**

Before the Court is Petitioner Udon Katephan's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). The Government filed a Return in opposition to the Petition. ECF No. 4. Mr. Katephan filed a Traverse in support of the Petition. ECF No. 5. For the reasons below, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** Petitioner's immediate release from custody.

/ / /

1

26cv3240-LL-MMP

## I.      BACKGROUND

Mr. Katephan was born to Laotian parents in a Thai refugee camp in 1984, and came to the United States as an infant with his family. Pet. at 3; *see also* Ex. A, Decl. of Udon Katephan ("Katephan Decl.") ¶ 1. Within the year, he was granted lawful permanent residency. *Id*.

In 2000, he was convicted of car theft. Pet. at 3; Katephan Decl. ¶ 2. He was put into removal proceedings and on April 13, 2004, he was ordered removed to Laos or in the alternative, Thailand. ECF No. 4-1, Decl. of Jason Cole ("Cole Decl.") ¶ 7. Immigration and Customs Enforcement ("ICE") released Mr. Katephan on an Order of Supervision ("OSUP") because it was unable to obtain a Travel Document for him. *Id.* ¶ 8.

The Government did not remove Mr. Katephan from April 2004 through April 2026, although they encountered him in 2006, 2008, and 2009. *Id.* ¶¶ 9-20. ICE was "unable" to obtain a Travel Document for Mr. Katephan in 2006 and 2009. *Id.* ¶¶ 8-11. In November 2010, Mr. Katephan was released from Donovan State Prison and transferred to ICE Fugitive Operations unit for his OSUP revocation because he was "unable to abide by the conditions of his existing [OSUP]." *Id*. ¶ 13. ICE sent a Travel Document request to the Thai consulate, which was rejected because Mr. Katephan "was not a Thai national." *Id.* ¶¶ 14-17. ICE released Mr. Katephan on an OSUP again in February 2011. *Id.* ¶ 18. ICE encountered Mr. Katephan in 2013 and 2015 but did not detain Mr. Katephan either time. *Id.*¶¶ 19-20. During this time, which spanned over twenty years, Mr. Katephan regularly complied with all check-in appointments. Pet. at 3.

On May 4, 2026, the San Diego Sheriff's Office arrested Mr. Katephan and on May 7, ICE revoked Mr. Katephan's OSUP. Cole Decl. ¶ 21-23. ICE's stated reason for Mr. Katephan's OSUP revocation was due to "missed scheduled appointments and his criminal arrest." *Id.* ¶ 23. Specifically, the Notice of Revocation of Release states that the reasons for his revocation are due to a missed check-in appointment on October 20, 2014, and for his arrest for possession of a stolen vehicle on May 4, 2026. ECF No. 4-3 at 2. On the same day as his re-detention, ICE states that it provided Mr. Katephan with a Notice of

Revocation of Release and an informal interview. *Id.* at 2-4. During the interview, Mr. Katephan stated that he did not receive notice about the 2014 appointment. ECF No. 4-3 at 4. The Notice of Revocation of Release also states that the Government was attempting to obtain a Travel Document for an "expeditious removal" to Laos or Thailand. *Id.* at 2. However, Mr. Katephan states he did not receive any paperwork or an interview where he could contest his removal. Katephan Decl. ¶ 4.

In the instant Petition, Mr. Katephan first asserts that ICE violated Due Process by failing to comply with its own regulations. Pet. at 4. Specifically, Mr. Katephan argues that ICE did not (1) provide him with a chance to contest the reasons for revocation, (2) clarify what circumstances had changed to allow for his removal, (3) evaluate Mr. Katephan's claim that he did not receive a letter notifying him the 2014 check-in, and (4) allow him time to prepare for the interview. *Id.* at 4-6; ECF No. 5 at 3-5. Second, Mr. Katephan argues that ICE cannot detain immigrants—like himself—who have "no significant likelihood of removal in the reasonably foreseeable future." Pet. at 4, 7-10; *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

The Government argues that they provided a Notice of Revocation of Release and an informal interview to Mr. Katephan as required by their regulations. Return at 2-3. In response to the *Zadvydas* claim, the Government argues that the *Zadvydas* period has not yet run and there is significant likelihood of removal in the reasonably foreseeable future based partially on the "changed diplomatic relations with Thailand and Laos since previous [Travel Document] requests." *Id*. at 3-4; *see also* Cole Decl. ¶¶ 25, 26.

## II.    LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his or her confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13,

119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales,* 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez,* 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018).

## III.   DISCUSSION

The Government asserts that it followed the required regulatory procedures and provided sufficient Notice of Revocation and an informal interview on the same day as Mr. Katephan's re-detention. Return at 2. The Government's position is that Mr. Katephan "received the process he was due under ICE regulations." *Id.* at 3. The Government states that "the notice of revocation of supervised release, signed by [Mr. Katephan] the same day ICE took him into custody, informed [him] of the reasons for revoking his supervision and gave him notice that he would receive the regulatory interview that day." *Id*. (citing Ex. B at 2-3). The Government also asserts that Mr. Katephan has not yet been detained for an unreasonable time because despite having the removal order in place for several decades, diplomatic relations with both Laos and Thailand have changed, and ICE requested travel documents for Mr. Katephan's removal on May 12, 2026. Return at 4. The Government states that "there has been sufficient progress made towards removing Petitioner to Laos or Thailand," and it has had successfully removed noncitizens to these countries in the last five years. *Id*. The Court will address these arguments in turn.

### a.  Due Process

A federal agency must follow its own regulations and procedures. *See Morton v. Ruiz,* 415 U.S. 199, 235 (1974). 8 C.F.R. 241.4(l) and § 241.13(i) regulate the re-detention process for a noncitizen after a period of release. These regulations afford a noncitizen with a "fundamental" right of due process: "[T]he opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). While 8 C.F.R. § 241.4(l) applies to all

re-detentions generally, 8 C.F.R. § 241.13(i) adds an additional layer of protection for noncitizens released upon good reason to believe that they will not be removed in the reasonably foreseeable future.

ICE may re-detain a noncitizen if the noncitizen has violated their conditions of release or is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." 8 C.F.R. §§ 241.13(i)(2), 241.4(i)(1). The Government must make an individualized determination of changed circumstances that would make removal significantly likely for a noncitizen before revocation occurs. *See Hagos v. Noem*, 26-CV-150-JES-DEB, 2026 WL 202873, at *4 (S.D. Cal. Jan. 27, 2026). Upon revocation of release, a noncitizen shall "be notified of the reasons for revocation of his or her release," and will be given "a prompt initial informal interview." *Id.* at *2. A same-day interview "essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful." *Kiwana v. LaRose et al.*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026) (finding that a same day interview deprives a noncitizen of a meaningful opportunity to contest the reasons for revocation and thus violates mandatory regulations). The noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

Here, the Government provides no explanation as to why it did not evaluate the contested facts at issue regarding Mr. Katephan's alleged missed appointment. During the same-day informal interview, Mr. Katephan stated that he did not receive notification of the one appointment he missed on October 20, 2014. ECF No. 4-3 at 4. The regulations require that any revocation must "include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i)(3). Because the Government did not evaluate his claim, the Government violated its statutory requirements.

26cv3240-LL-MMP

Additionally, conducting the interview on the same day as his re-detention without any advance notice and without the opportunity to obtain documents or provide a well-crafted response denied Mr. Katephan the ability to meaningfully respond to ICE's reasons for his revocation. *See Hagos*, 2026 WL 202873, at *4 (finding ICE violated its regulations when it re-detained a noncitizen without notice and conducted an informal interview that same day); *see also Kiwana v. LaRose et al.*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661. The Government failed to give Mr. Katephan a meaningful opportunity to respond to the reasons for his revocation. ECF No. 4-3 at 4. While he did provide an oral response, Mr. Katephan responded only to the allegation of the missed appointment and not his recent arrest. Now that he has had time to consult with an attorney, Mr. Katephan states in his Petition that the allegation was not sufficient to trigger his arrest for a violation of a condition of his release: "[The Government] never state[s] that Mr. Katephan was *convicted of* this offense—in fact, they report that Mr. Katephan was released from state criminal custody three days later . . . [which] suggests that there was insufficient evidence he committed the offense at all." Traverse at 4. Here, the Court finds that the informal interview provided by the Government failed to provide a meaningful opportunity to be heard as required under 8 C.F.R. § 241.13(i)(3), and thus violated Mr. Katephan's due process rights.

Further, although the Government argues in the Return that the "diplomatic relations with both Laos and Thailand have changed," it did not specify how this will permit Mr. Katephan's removal in the foreseeable future. Return at 4. The Government's assertion "fall[s] short of establishing changed circumstances that make removal significantly likely for Petitioner." *Hagos*, 2026 WL 202873, at *5 (holding that Government failed to demonstrate "changed circumstances" when "[n]othing in the declaration appears to be an individual finding for Petitioner"). The Government asserts that it "believes" that changed circumstances will result in Mr. Katephan's removal to Laos or Thailand in the reasonably foreseeable future. However, ICE must determine the circumstances have changed "before the removable [noncitizen] has had his release revoked." *See, e.g., Tran v. Noem*, No. 25-

26cv3240-LL-MMP

cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (granting habeas corpus relief when ICE revoked release for noncitizen before determining what circumstances changed to permit successful removal). Notably, the Government did not submit a request to Laos or Thailand for Mr. Katephan's Travel Document until May 12, 2026—five days after his re-detention—and has not confirmed their progress or likelihood toward procuring a Travel Document. With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [noncitizen's] release," the Government has violated its own rule under § 241.13(i). *Id.*

"Courts have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099–100 (S.D. Cal. 2025) (citing *Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *25-26 (D. Md. Aug. 25, 2025)). The Court finds that ICE failed to follow its own statutory regulations and that Mr. Katephan must be released.

### b. *Zadvydas* Claim

Having granted the petition on the merits above, the Court declines to reach the remainder of the claims in the petition.

### IV.    CONCLUSION

Accordingly, the Court **GRANTS** Mr. Katephan's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. The Government shall immediately release Mr. Katephan from custody, subject to the conditions of his preexisting Order of Supervision. Mr. Katephan shall comply with all conditions that were in effect before his May 7, 2026 re-detainment. The Clerk shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  July 9, 2026

Honorable Linda Lopez
United States District Judge

26cv3240-LL-MMP